2011 UT 25

**OAK LANE HOMEOWNERS ASSOCIATION, Plaintiff and Petitioner,**

v.

**Dennis L. GRIFFIN and Renae Griffin, Defendants and Respondents.**

No. 20090837.

Supreme Court of Utah.

May 6, 2011.

Stephen Quesenberry, J. Bryan Quesenberry, Jessica Griffin Anderson, Salt Lake City, for plaintiff.

Shawn D. Turner, Salt Lake City, for defendant.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 The Oak Lane Homeowners Association (the Association) seeks review of the court of appeals' decision in *Oak Lane Homeowners Association v. Griffin (Oak Lane II)*, 2009 UT App 248, 219 P.3d 64, arguing that the court of appeals erred when it affirmed the district court's grant of summary judgment to Dennis and Renae Griffin regarding the existence of a private easement over a private lane. The court of appeals held that a private easement was created in favor of the Griffins by their deed's reference to the subdivision's recorded plat, which showed that the Griffins' lot abuts the private lane. We affirm.

## BACKGROUND

¶ 2 In 1977, the owners of five lots in Alpine City, Utah, filed a plat with the city to create the Oak Hills Subdivision. According to the plat, a public road ran along the subdivision's east side, and lots 1, 3, 4, and 5 were accessible only by a road that was clearly labeled "private lane" (and was subsequently named "Oak Lane"). Lot 2, on the other hand, was accessible from both Oak Lane and the public road. To make it clear that they intended Oak Lane to remain private, the owners altered the plat's language by crossing out the phrase dedicating the plat's "streets and other public areas" for "perpetual use of the public," as shown below:

> Know all men by these presents that we, all of the undersigned owners of all of the property described in the surveyor's certificate hereon and shown on this map, have caused the same to be subdivided into lots, blocks, streets, and easements ~~and do hereby dedicate the streets and other public areas as indicated hereon for perpetual use of the public~~.

Alpine City subsequently accepted the plat,[1] and the city also deleted from its resolution

1. We note that the particular questions raised in this case are due in part to Alpine City's acceptance of the plat, which occurred despite the plat's failure to conform to the city's zoning

ordinances then in effect. According to the city's ordinances, a private lane could service "no more than four (4) residential dwelling units." Alpine City, Utah, Zoning Ordinance 01–76 ch.

any language regarding its acceptance of the plat's dedication of the streets for public use. All parties agree that Oak Lane was created as, and still remains, a private road.

¶ 3 Seven years after the filing of the plat, the Van Wagoners (who owned Lot 2 at the time the plat was filed, and who had signed the plat themselves) sold Lot 2 to the Watkinses, who resided there for five years. Both the Van Wagoners and the Watkinses submitted affidavits stating that they "understood that Oak Lane was a private road" and that they could use it "only with permission." The Griffins purchased Lot 2 in 1988 under a deed that referenced the recorded 1977 plat. Their deed states that they took title "[s]ubject to easements, covenants, conditions and restrictions of record."

¶ 4 Fifteen years after the Griffins purchased Lot 2—during which time the Griffins had continuously used Oak Lane for ingress and egress—the owners of lots 1, 3, 4, and 5 decided to form the Association to manage and maintain Oak Lane. According to their affidavits, the members of the Association invited the Griffins to join; the Griffins refused and "asserted [their] intent to continue using Oak Lane." The Association then requested that the original owners of the platted lots (including the Van Wagoners) quitclaim whatever interests they held in Oak Lane to the Association, which then claimed ownership of the road and placed boulders along its edges to prevent the Griffins from accessing Lot 2 from Oak Lane.

¶ 5 The Griffins sued the Association, and the district court granted their motion for summary judgment on the grounds that under the zoning ordinance in effect at the time the plat was filed, Oak Lane was a "common-use private lane open to the public" and that therefore "the Griffins had a right to access their lot through Oak Lane." *Oak Lane Homeowners Ass'n v. Griffin*, 2006 UT App 465, ¶ 5, 153 P.3d 740. On appeal, the court of appeals reversed and remanded because "the question of whether Oak Lane was deemed a common-use private lane present[ed] a disputed issue of material fact," which rendered the district court's grant of summary judgment improper under rule 56(c) of the Utah Rules of Civil Procedure. *Id.* ¶ 10.

¶ 6 On remand, the Griffins again moved for summary judgment, this time arguing that they had an easement to use Oak Lane for ingress and egress because their deed referenced the 1977 plat. *See Oak Lane II*, 2009 UT App 248, ¶ 8, 219 P.3d 64. The district court accepted this argument and granted the Griffins' motion, holding that "[w]hen the Oak Lane Subdivision was created, an easement was created over the private lane, contained in the subdivision, for all those property owners who abut the lane." *Id.* (alteration in original) (internal quotation marks omitted). The Association appealed, arguing that the district court's ruling was erroneous because it created a new type of easement, an "easement by plat," that Utah courts had never recognized. *Id.* ¶ 10. The court of appeals affirmed the district court's ruling, holding that "Utah case law fully supports [the district court's] determination that a right to use Oak Lane to access lot 2 arose in favor of the Griffins when their deed referenced the recorded plat." *Id.* ¶ 24. We granted certiorari to resolve the question whether "the court of appeals erred in affirming the district court's grant of summary judgment as to the determination of an easement in favor of [the Griffins]." We have jurisdiction under Utah Code section 78A-3-102(3)(a) (Supp.2010).

**STANDARD OF REVIEW**

¶ 7 " 'On certiorari, we review the court of appeals' decision for correctness, giving its conclusions of law no deference.' " *State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251 (quoting *State v. Bujan*, 2008 UT 47, ¶ 7, 190 P.3d 1255). Furthermore, " '[s]ummary judgment is appropriate only when there is

III(G) (Apr. 26, 1976). The ordinance further required that "[p]ermission to develop a lane may be granted by the Planning Commission upon receipt of a construction and maintenance agreement assuring that all conditions contained in this ordinance shall be met." *Id.* Thus, the plat failed to conform in two ways: (1) the number of lots that the private lane serviced exceeded the maximum number specified by the ordinance, and (2) there was no "construction and maintenance agreement" in force at the time the plat was filed.

no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Innerlight, Inc. v. Matrix Group, LLC*, 2009 UT 31, ¶ 8, 214 P.3d 854 (quoting *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122).

## ANALYSIS

¶ 8 We are asked to determine whether a deed's reference to a recorded plat is sufficient to create an easement over a private lane shown on the plat. The Association argues that recognizing such an easement would be improper because an "easement by plat" is inconsistent with Utah case law. We disagree. Although the Association correctly points out that Utah case law has not yet recognized the creation of an easement by plat over a *private* lane, there is ample support for the creation of such an easement over *public* roads. We see no reason to distinguish between public and private roads for the purpose of creating an easement by virtue of a deed's reference to a recorded plat.

¶ 9 We have repeatedly held that when property abuts a public roadway, a private easement over that roadway arises in favor of the abutting landowner. *Gillmor v. Wright*, 850 P.2d 431, 437 (Utah 1993) ("Under our law, a landowner whose property abuts a public road possesses, by operation of law, a private easement of access to that property across the public road."); *Mason v. State*, 656 P.2d 465, 468 (Utah 1982) ("Except where changed by statutes pertaining to limited access highways, an abutting landowner has a private easement of ingress and egress to existing public highways." (footnote omitted) (citation omitted)); *see also Carrier v. Lindquist*, 2001 UT 105, ¶ 16, 37 P.3d 1112 (quoting *Gillmor* and *Mason*).

¶ 10 Furthermore, we have recognized that a deed's reference to a recorded plat is sufficient to give rise to an easement over any

public road shown on that plat, provided that the deed is to property that abuts the public road. For example, in *Tuttle v. Sowadzki* we stated the following:

No doubt the law is to the effect that purchasers buying lots with reference to a map or plat which is authorized by the owner of the ground, and such map or plat shows that such lots abut upon a street or alley which also is shown on such map or plat to be a street or alley, then, and in such event, the *purchasers acquire a right to have such street or alley maintained as such,* and the owner of the ground is estopped from vacating or from obstructing the same. Under such circumstances, the purchasers, *in addition to a public easement, also acquire what is termed a private easement* in a street or alley which is appurtenant to their lots and constitutes a property right which can only be taken from them or obstructed by making proper compensation therefor.

41 Utah 501, 126 P. 959, 962 (1912) (emphases added); *see also Carrier*, 2001 UT 105, ¶ 12, 37 P.3d 1112 ("Under Utah law, landowners whose property abuts public streets, alleys, and public ways that appear on a plat map are entitled to a private easement over those public ways."); *Boskovich v. Midvale City Corp.*, 121 Utah 445, 448–49, 243 P.2d 435 (1952) (Wolfe, C.J., concurring) ("[I]f the dedicated streets of a subdivision are laid out and right to the use thereof has arisen, a private easement arises therein which constitutes a vested proprietary interest in the lot owners."); *Tuttle*, 126 P. at 963 (explaining that a deed's reference to a plat "may be considered as an implied covenant by the vendor that the highway [shown on the plat] is what it purports to be, and that it will not be obstructed or interfered with by him").[2]

¶ 11 Our prior cases thus stand for the proposition that there is a presumption of a private easement over a public road in

---

**2.** We note that our approach is consistent with treatises' treatment of the law of easements. *See* 4 POWELL ON REAL PROPERTY § 34.06, at 34–40 to – 41 (Michael Allen Wolfe ed., 2010) ("Where a conveyance of land ... refers to a map on which spaces for streets, parks, or other common uses are shown ... the conveyee of the land acquires

an easement with respect to the street or the areas shown on the map." (footnotes omitted)); 7 THOMPSON ON REAL PROPERTY § 60.03(a)(3)(iii), at 481 (David A. Thomas ed., 2006) ("[T]hose who have purchased in reliance on the roads shown in a plat or plan retain a private easement. . . .").

favor of a landowner when (1) the landowner owns property abutting the public road, (2) the property's deed references a recorded plat, and (3) the recorded plat shows the public road.

¶ 12 We note that the satisfaction of these three conditions creates only a presumptive easement because under certain conditions an easement can be extinguished. For example, in *Tuttle* we concluded that the petitioners had not obtained easement rights over an abandoned public road solely by virtue of their deed's reference to a recorded plat because there was sufficient evidence to find that any easement rights that could have passed to them under their deed had been abandoned by the property's previous owners. *Tuttle*, 126 P. at 964–65. Thus, in circumstances where a deed references a recorded plat and that plat reveals that the property being conveyed abuts a public road, a private easement arises only in the absence of evidence showing that such an easement has been abandoned prior to the conveyance.

¶ 13 Although the foregoing cases do not address the question of whether a deed's reference to a recorded plat is sufficient to create an easement over a *private* road, we do not see any rationale for distinguishing between public and private roads for the purpose of recognizing an "easement by plat." We therefore hold that an easement by plat arises over *either* a public *or* a private road, provided that the three aforementioned conditions are satisfied and there is no evidence of abandonment of that easement.

¶ 14 When this rule is applied to the case at bar, it is clear that the three conditions set forth above have been met: (1) the Griffins' property abuts Oak Lane, (2) the Griffins' deed references a recorded plat, and (3) the plat shows that the Griffins' lot abuts Oak Lane. By virtue of their deed's reference to a recorded plat, there is a presumption that the Griffins hold a private easement over Oak Lane, unless the Association can provide evidence showing that there was intent on the part of the Griffins (or any previous landowner) to extinguish or abandon that easement. *See Riter v. Cayias*, 19 Utah 2d 358, 431 P.2d 788, 789 (1967) (holding that "the intention of the owner to abandon [an

easement]," not "mere nonuse," is required to prove abandonment). The record before us, however, contains no such evidence. Although both the Van Wagoners and the Watkinses (the Griffins' predecessors in interest) claimed they "understood that Oak Lane was a private road" and that they could use it "only with permission," this is not proof that they never used Oak Lane, or that they intended to abandon any easement they had over Oak Lane. Furthermore, the Griffins appear to have used Oak Lane for ingress and egress continuously since they purchased Lot 2. Accordingly, there does not seem to be any reason to infer that the Griffins or any of their predecessors in interest intended to abandon their right to use Oak Lane.

¶ 15 The Association relies heavily upon the following language from *Tuttle* to support its argument that no private easement arose over Oak Lane by virtue of the Griffins' deed: "There being no public highways or easement in existence when respondents obtained their lots, no such easement could pass to them as appurtenant to the lots, nor could a private easement be created in a public highway because no such highway was in existence." 126 P. at 963. The Association interprets this language to mean that before a private easement is created by a deed's reference to a recorded plat, a public easement must exist over the road in question. Because Oak Lane was never a public road, the Association argues, no public easement ever existed and therefore no private easement could arise simply by referencing the plat in Lot 2's deed.

¶ 16 This, however, is a misreading of *Tuttle*, wherein we clearly stated that "while [public and private easements] *need not be created at the same time,* ... they must exist contemporaneously" before one can survive the other. *Id.* at 964 (emphasis added). In other words, in *Tuttle* we did not require that a public easement exist before a private easement could be created by a deed's reference to a recorded plat, or vice versa. Rather, the language quoted by the Association merely stands for the proposition that, for either type of easement to "survive" the other, the easements must be (1) held contemporane-

ously and (2) not abandoned after one or the other is extinguished.

¶ 17 In this case, Oak Lane was created as, and continues to be, a private lane. The record does not show any intent on the part of any of the owners of the lots in the Oak Hills Subdivision to discontinue using Oak Lane for ingress and egress. Thus, under the reasoning in *Tuttle,* the private easement is appurtenant to Lot 2 and is now held by the Griffins pursuant to their deed.

¶ 18 The Association also argues that a private road is equivalent to a vacated public road, and therefore no private easement could arise from the Griffins' deed's reference to the recorded plat. In support of this argument, the Association argues that "a private easement expires as a matter of law if the public road is vacated (and thereby becomes a private road) prior to the abutting landowner's purchase of the abutting property." Again, we disagree.

¶ 19 We have held that when a plat is properly accepted and recorded by the municipality, the "interest a municipal body acquires in the streets ... is a determinable fee." *Sears v. Ogden City,* 572 P.2d 1359, 1363 (Utah 1977); *see also* UTAH CODE ANN. § 17-27a-607(1) (2009). The effect of vacating a public road, however, is not to automatically transform the street into a private road. Rather, when a public road is vacated, the fee reverts to the abutting landowners, extending to the middle of the street. *See Sears,* 572 P.2d at 1363; *see also* UTAH CODE ANN. § 72-5-103(3) (2009) ("A transfer of land bounded by a highway on a right-of-way for which the public has only an easement passes the title of the person whose estate is transferred to the middle of the highway.").

¶ 20 Furthermore, the decision to vacate a public road does not automatically extinguish any easements that may exist upon that road. *See, e.g., Gillmor,* 850 P.2d at 437–38 ("A subsequent abandonment of a public right-of-way over [a public] road has no effect on a private easement owned by an abutting landowner."). Thus, even when a public road is vacated and, as shown above, the determinable fee held by the municipality reverts back to the abutting landowners, that fee is still encumbered by any easements that previously existed over the vacated road, unless those easements have been abandoned.

¶ 21 Finally, the Association argues that even if the Griffins have an easement to use Oak Lane, allowing them to continue to use Oak Lane without contributing toward the costs of its maintenance is inequitable. Our case law indicates that the default rule in Utah for the maintenance of private roadways is that, "[a]bsent any agreement on the question of maintenance of a private way, the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as such may be ascertained." *Aspen Acres Ass'n v. Seven Assocs., Inc.,* 29 Utah 2d 303, 508 P.2d 1179, 1183 (1973) (internal quotation marks omitted); *see also Dansie v. Hi–Country Estates Homeowners Ass'n,* 2004 UT App 149, ¶ 21, 92 P.3d 162 (ordering the district court to consider the plaintiff's "proportionate use of the roadways, and to determine the proportionate maintenance costs pursuant to that use"). This default rule for the maintenance of private roads can be altered (and usually is) by "a homeowners association's bylaws, CC & Rs, or other multilateral agreement." *Id. Dansie,* 2004 UT App 149, ¶ 20, 92 P.3d 162.

¶ 22 In this case, when the original plat was filed there was no contemporaneous filing of covenants, conditions, and restrictions, no formation of a homeowners association, and no creation of a "multilateral agreement" for the maintenance of Oak Lane. Hence, in keeping with our precedent, the upkeep of Oak Lane ought to be determined by proportionate use, and this opinion does not foreclose the possibility of the Association seeking such a remedy.[3]

## CONCLUSION

¶ 23 We affirm the court of appeals' conclusion that Utah case law supports the creation

---

**3.** We note that the issue of maintenance costs could also be resolved by addressing the question of the ownership of Oak Lane. However, as the parties did not litigate the issue of ownership, we do not address it here.

of a private easement by virtue of a deed's reference to a recorded plat. Under Utah case law, public and private easement rights presumptively arise in favor of a purchaser whose deed references a recorded plat that shows the property abutting a road. This presumption can be rebutted by evidence showing that the easement has been abandoned by a previous landowner prior to the conveyance. Because the Griffins' deed referenced a recorded plat that shows their property abutting a private road and because there was no evidence that their easement had been abandoned prior to the conveyance, the court of appeals correctly concluded that the Griffins hold a private easement over Oak Lane.

¶ 24 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Chief Justice DURHAM's opinion.